UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ERIC MONTGOMERY, | No. ED CV 09-01598-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

1     considered all of the relevant medical evidence of record;
2  2. Whether the ALJ properly considered Plaintiff's subjective
3     complaints and properly assessed Plaintiff's credibility;
4     and
5  3. Whether the ALJ posed a complete hypothetical to the
6     vocational expert and properly considered the vocational
7     evidence of record.
8 (JS at 3-4.)

10  This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE ALJ DID NOT PROVIDE LEGALLY SUFFICIENT REASONS TO REJECT THE OPINION OF PLAINTIFF'S TREATING ORTHOPEDIST, DR. AHMED, BUT DID PROVIDE SUFFICIENT REASONS TO REJECT THE OPINION OF HIS TREATING PSYCHIATRIST, DR. CURTIS**

  In Plaintiff's first issue, he questions whether the ALJ properly considered all of the relevant medical evidence of record. (JS at 4.) Effectively, this issue can be divided into two sub-parts: whether the ALJ properly considered the opinion of Plaintiff's treating orthopedist, Dr. Ahmed, and, second, whether the ALJ properly considered the opinion of his treating psychiatrist, Dr. Curtis. The Court finds error with regard to the ALJ's decision as to the first sub-part, but not the second.

**A.   The ALJ's Decision**.

On April 16, 2005, Plaintiff suffered a serious industrial injury to his left hand when a forklift crushed it. (See AR at 26-28; 410-411.)  He began treating on April 29, 2005 with Dr. Ahmed, an orthopedic surgeon, whose reports substantially populate the Administrative Record in this case. (See AR at 410-444; 303-307; 473-502.)  The last report by Dr. Ahmed is dated July 25, 2007. (AR 303-307.)

The ALJ found Plaintiff suffers from the following severe impairments: history of crush injury to left hand, status post open reduction and internal fixation and subsequent hardware removal, history of bilateral carpal tunnel syndrome, status post left carpal tunnel release, mild neck and back degeneration, and a history of left shoulder impingement. (AR 11.)

After considering the evidence, the ALJ found the following to be Plaintiff's residual functional capacity ("RFC"): "Plaintiff has the ability to perform light work, except he can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  He is precluded from climbing ladders, ropes and scaffolds.  He can perform occasional fine and gross manipulations bilaterally and perform occasional work at or above shoulder level with his left upper extremity." (AR 14.)

The ALJ referenced Plaintiff's referral to Dr. Ahmed for orthopedic consultation and treatment in connection with his workers' compensation litigation. (AR 15.)  The ALJ noted that "after a thorough examination" Dr. Ahmed diagnosed Plaintiff with a crushing trauma left hand and fractures phalanges second, third, fourth, and fifth, internally fixed with a soft tissue contusion laceration second, third, and fourth; left elbow strain with epicondylitis; left

3

shoulder strain; cervical strain; and left wrist strain." (AR 15.) The ALJ noted subsequent treatment by Dr. Ahmed, physical therapy which occurred between July 2005 and November 2005, and left carpal tunnel release surgery by Dr. Ahmed on January 31, 2007. (AR 15, 17.)

In determining Plaintiff's RFC, the ALJ gave great weight to a consultative neurologic evaluation ("neurologic CE") performed on March 6, 2007 by Dr. Woodard. (AR 285-287.) As summarized by the ALJ, Dr. Woodard found Plaintiff to be incapacitated for any very repetitive, strenuous or skillful activity involving his left hand, but opined that in a normal workday Plaintiff should be able to sit for eight hours and stand or walk for eight hours; should be able to lift and carry 40 pounds occasionally and 20 pounds frequently; and there was no incapacity for bending, stooping or crouching, or reaching with either hand. Dr. Woodard found Plaintiff capable of grasping, handling, fingering and feeling frequently with his right major hand and occasionally with his left hand. (Id., AR 18.)

The ALJ also gave significant weight to the opinion of an orthopedic consultative examiner ("orthopedic CE"), Dr. Altman, who examined Plaintiff at the request of the Department of Social Services on October 23, 2006. (AR 18, 259-263.) The ALJ summarized Dr. Altman's conclusions: that Plaintiff was capable of pushing, pulling, lifting and carrying 20 pounds occasionally and 10 pounds frequently; walking and standing for four hours in an eight-hour workday; sitting without restrictions; occasional ability to do postural activities; agility activities to be avoided; gross and fine manipulative [sic] done without restrictions on the right hand and on a frequent basis on the left. (AR 18.)

The ALJ also noted opinions of certain physicians who examined

4

1  and treated Plaintiff in connection with his workers compensation
2  case.  For example, he referenced an examination by Dr. Nguyen,
3  performed on August 4, 2006. (AR 18, 233-239.)  He rejected Dr.
4  Nguyen's statements regarding Plaintiff's temporary total disability
5  "because they are based on criteria other than Social Security
6  Regulations, and also because such determinations are reserved to the
7  Commissioner or Administrative Law Judge." (AR 18.)  Nevertheless, the
8  ALJ failed to discuss the clinical examination performed by Dr.
9  Nguyen, or the conclusions drawn by Dr. Nguyen based on that
10 examination, for example, as to Plaintiff's left hand.  Dr. Nguyen
11 found range of motion markedly decreased; Plaintiff is unable to make
12 a fist on the left side; decreased range of motion on the left hand
13 with the fingers; index, middle, ring and little finger range of
14 motion decreased, and decreased extension. (AR 236.)

15     With regard to Dr. Ahmed, although the ALJ considered him to be
16 a treating physician, he made the following finding:

17     "... his opinion regarding the [Plaintiff's] ability to
18     perform all work activity is not entitled to controlling
19     weight as it is not well-supported by objective findings and
20     is not consistent with the other evidence of record.
21     Accordingly, while I do not entirely dismiss Dr. Ahmed's
22     opinion, I cannot credit [sic] find it sufficiently
23     supported to warrant the establishment of any limitations
24     beyond those set forth above."
25 (AR 18-19.)
26 //
27 //
28 //

5

    **B.   Applicable Law**.

        **1.   Treating Physician**.

In the hierarchy of medical opinions in Social Security cases, it is the treating physician who is, generally, accorded the most credibility. (See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).) Where the opinions of treating physicians are controverted by those of another medical source, based on independent clinical findings, the ALJ may only reject the opinion of the treating physician by citing specific and legitimate reasons based on substantial evidence in the record.  See Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004).

        **2.   Workers' Compensation Physicians**.

A very succinct and useful discussion of the relevance of the opinions of physicians who examine and/or treat patients for workers' compensation purposes in contained in the decision of Magistrate Judge Wistrich of this District in Booth v. Barnhart, 181 F.Supp.2d 1099 (C.D. Cal. 2002).  Citing the Third Circuit's decision in Coria v. Heckler 750 F.2d 245, 247 (3rd Cir. 1984), Magistrate Judge Wistrich held that,

> "... the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings. Coria, 750 F.2d at 247-248 (holding that by failing to consider medical reports submitted in state workers' compensation proceeding the ALJ failed to weigh all of the evidence of record); cf. Lester v. Chater, 81 F.3d 821, 832 (9th Cir.1995) (holding

1    that the ALJ erred in rejecting a physician's reports
2    because they "were clearly obtained by the claimant's
3    attorney for the purpose of litigation," and stating that
4    "[t]he purpose for which medical reports are obtained does
5    not provide a legitimate basis for rejecting them").
6    Instead, the ALJ must evaluate medical opinions couched in
7    state workers' compensation terminology just as he or she
8    would evaluate any other medical opinion. See Coria, 750
9    F.2d at 247-248 (explaining that because of the differences
10   between state workers' compensation and federal social
11   security tests for determining disability, "the ALJ could
12   reasonably disregard so much of the physicians' reports as
13   set forth their conclusions as to [the plaintiff's]
14   disability for worker's compensation purposes," but also
15   explaining that "the ALJ should evaluate the objective
16   medical findings set forth in the medical reports for
17   submission with the worker's compensation claim by the same
18   standards that s/he uses to evaluate medical findings in
19   reports made in the first instance for the Social Security
20   claim"); Packer v. Apfel, 1999 WL 14668, at *5
21   (E.D.N.Y.1999) (noting that while the treating physicians'
22   opinions that the plaintiff was disabled for workers'
23   compensation purposes were not determinative of the question
24   whether the plaintiff was disabled under the Social Security
25   Act, the ALJ nonetheless was obliged to explain his
26   rejection of those opinions in accordance with the Social
27   Security regulations, and holding that the ALJ in that case
28   erred in failing to do so); Bosley v. Shalala, 879 F.Supp.

7

296, 304 (W.D.N.Y.1995) (stating that "the ALJ was not entitled to ... disregard, or *1106 neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in" a treating physician's reports, even though those reports were prepared for a workers' compensation case) (citations omitted)."
(181 F.Supp.2d 1099.)

Magistrate Judge Wistrich further explained that in evaluating a medical opinion prepared for worker's compensation purposes, the ALJ must "translate" terms of art utilized in such medical opinions "in order to accurately assess the implications of those opinions for the Social Security disability determination." (181 F.Supp.2d at 1106, citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).)

**C. <u>Analysis</u>**.

    **1. <u>Dr. Ahmed and Other Workers' Compensation Related Physicians</u>**.

The ALJ's rejection of Dr. Ahmed's opinion was based on two articulated factors: that it was not well-supported by objective findings, and it was not consistent with the other evidence of record. Neither of these reasons substantiate a rejection or depreciation of Dr. Ahmed's opinion. With regard to the asserted lack of objective findings, even a cursory review of Dr. Ahmed's reports indicates that he often examined and clinically tested Plaintiff. Dr. Ahmed's first report of April 29, 2005 documents such an examination. (<u>See</u> AR at 410-419.) This pattern continues throughout Dr. Ahmed's reports. Dr.

Ahmed's July 13, 2005 report, for example, indicates that he examined Plaintiff. (See AR at 427-430.)  See also Dr. Ahmed's December 23, 2005 report. (AR 431-434.)  Additional cites can be made to Dr. Ahmed's reports for this point, but it is clear that for a period of over two years, Dr. Ahmed saw Plaintiff on a frequent basis, examined him, and set forth his conclusions based on his examination and testing.

The ALJ's second reason, which is that Dr. Ahmed's conclusions are not consistent with the other evidence of record, is not an appropriate basis for rejection of a treating physician's opinion. First, it is so general that it does not provide a basis for judicial review.  What is the "other evidence of record," and how is Dr. Ahmed's opinion inconsistent with that evidence?  The absence of such a specific discussion renders the ALJ's ultimate conclusion unsustainable on judicial review.

The ALJ's error with regard to the basis for his rejection of Dr. Ahmed's opinion, and of the opinions of other physicians who also examined or treated Plaintiff in a workers' compensation context necessitates remand so that these opinions may be properly considered in determining Plaintiff's severe impairments and RFC, and generally, considering this evidence in the sequential evaluation process.

**2.   Dr. Curtis.**

The same infirmities do not characterize the ALJ's rejection of the opinion of Dr. Curtis. (AR at 12-13, 401-409.)  After doing an initial evaluation of Plaintiff on August 19, 2008 (AR 401), Dr. Curtis completed a document entitled "Mental Residual Functional Capacity Questionnaire" ("Questionnaire") on September 23, 2008. (AR

409.) The ALJ rejected Dr. Curtis' conclusions as set forth in that questionnaire, noting that they were contained in a form which consisted largely of checked boxes; that Dr. Curtis failed to include any evidence of treatment or testing other than indicating he had had an initial meeting with Plaintiff about a month earlier; and that Dr. Curtis acknowledged that Plaintiff was well oriented in all spheres; his judgment was intact; his impulse control was adequate; and he had no clear perceptual problems, hallucinations or delusions. The ALJ believed that Dr. Curtis' questionnaire was prepared for the hearing (which in fact occurred shortly thereafter, on October 8, 2008; see AR 23-52). Further, the ALJ concluded that Dr. Curtis' questionnaire conclusions were not supported by any laboratory or clinical findings. (AR 12-13.) For that reason, the ALJ gave Dr. Curtis' opinion "scant weight." (Id.) The ALJ noted that there was a lack of evidence of any longitudinal history of psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment. (AR 13.)

These reasons, set forth in the ALJ's decision, in fact do constitute a sufficient basis to reject Dr. Curtis' opinion, in favor of the evidence in the record consisting of a consultative psychiatric examination by Dr. Yang which occurred on October 20, 2006 which found no evidence of cognitive deficits, perceptual disturbances, or delusional disorders. (AR 12, 265-268.) The ALJ also cited the fact that the State Agency review psychiatrist agreed with Dr. Yang, affirming the ALJ's conclusion that Plaintiff does not have a severe mental impairment. (AR 12, 272-282, 300.) See also Batson v. Commissioner, 359 F.3d 1190, 1196-1197 (9th Cir. 2004)(substantiating an ALJ's rejection of a treating physician's form contained in a check-list without supporting objective evidence, and which was

10

contradicted by other identified medical evidence in the record).

### 3. **Additional Proffered Evidence**.

Plaintiff proffers 10 exhibits (denominated Exhibits ["Exs."] A-J, attached to the JS) which he asks the Court to enter into the record as new and material evidence. These documents consist of medical records dated between September 18, 2008 and June 25, 2009. Thus, there are records which predate the effective date of the ALJ's decision in this case, and records which postdate it.

The parties have briefed the law concerning consideration of additional evidence. As stated in the case of Booz v. Secretary of Health and Human Services, 734 F.2d 1378 (9th Cir. 1984), the Court must determine that new evidence is both material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. (734 F.2d at 1380, citing 42 U.S.C. §405(g).) With regard to the materiality component, the Court in Booz indicated that such evidence must create a reasonable possibility that the outcome would have been changed. (Id. at 1381.) See also Clem v. Sullivan, 894 F.2d 328 (9th Cir. 1990), articulating an identical standard.

It seems clear to the Court that with regard to medical documentation which postdates the effective date of the decision, such evidence may not be considered "new evidence" which the Court can consider. Evidence described in 42 U.S.C. §405(g), and the applicable Ninth Circuit cases, must logically have predated the effective date of a Decision, in order to trigger both the materiality and good cause requirements.

Looking first at the materiality requirement, it appears to the

11

Court that, of the timely evidence proffered, Ex. B, a September 30, 2008 medical report of Dr. Andrew J. Miles, does meet this test. Dr. Miles' report was prepared after he evaluated Plaintiff on September 3, 2008, which predates the December 2, 2008 decision of the ALJ. (AR 22.) Moreover, with particular regard to Plaintiff's hands and fingers, which are the primary subjects of Dr. Ahmed's examination and treatment, Dr. Miles concluded that Plaintiff had a decreased range of motion with the middle finger; that he was unable to make a full fist on the left; that he had decreased sensation in the area of the median nerve into the fingers bilaterally, more so on the left than the right. (Ex. B at 5.) The materiality of this evidence is that it would seem to indicate functional deficits in the area of Plaintiff's left hand which persisted well past his carpal tunnel release surgery and the treatment reports of Dr. Ahmed, which only extend through July 25, 2007, over a year prior to Dr. Miles' examination.

Concerning the good cause requirement, the Court is satisfied that it has been established here. Plaintiff's counsel indicates in his portion of the JS that he was "only recently made aware of the additional evidence from the Plaintiff himself. Plaintiff maintains that it was impossible to produce some of these items of evidence because of the proximity to the hearing itself; the records simply were not yet available at the time of the hearing; ..." (JS at 9.) The Court does note that there is a great volume of medical records in this case, and that Plaintiff's counsel at the administrative level, who presently represents Plaintiff in this action, was diligent in seeking to obtain and supply to the ALJ a significant amount of medical evidence. It is not illogical that some of that evidence, in particular medical records which predated the hearing by only a short

1 period of time, might have been unavailable to Plaintiff or his
2 counsel. For that reason, the Court finds both good cause and
3 materiality with regard to Ex. B, the September 30, 2008 report of Dr.
4 Miles.

## II

### PLAINTIFF'S CREDIBILITY WILL BE REEXAMINED ON REMAND

In Plaintiff's second issue, he asserts that the ALJ improperly depreciated his credibility.

The ALJ's determination of Plaintiff's credibility concerning subjective complaints sets forth a number of specific reasons. (AR 19.) In particular, the ALJ unfavorably compared the statements of Plaintiff and his significant other, both of whom contended that Plaintiff did nothing around the house in the way of chores, while the significant other and her children did everything (AR at 19), with statements made by Plaintiff to a consultative examiner that he did some household chores, errands, shopping and cooking. (Id.) Further, despite claims of total debilitation, Plaintiff admitted that he spent time helping out with his significant other's children and with household chores. (Id.) The ALJ also cited apparent contradictions in Plaintiff's statements as to where he lived. Further, the ALJ contrasted Plaintiff's allegations of severe pain with an apparent admission that he only takes pain medication occasionally. (Id.)

In evaluating subjective pain complaints, once a claimant establishes an underlying medical impairment which could reasonably be expected to produce subjective symptoms, it is up to the ALJ to provide specific, clear and convincing reasons to reject allegations of subjective and disabling pain symptoms. (See Thomas v. Barnhart,

278 F.3d 947, 959-60 (9th Cir. 2002); Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc).)

Many of the evidentiary factors cited by the ALJ in the decision are supported by the record and are the types of evidence which may be considered in the credibility analysis according to the above-cited cases and applicable regulations. See Social Security Ruling ("SSR") 96-7p. Nevertheless, and in particular because on remand, the opinions of Dr. Ahmed and other workers' compensation-related physicians must be reevaluated, it may well be that this evidence will have a material effect upon the evaluation of Plaintiff's credibility. The Court notes, for example, that during many of Plaintiff's visits with Dr. Ahmed over approximately a two-year period, he complained of pain in the same body locations as are referenced in the ALJ's credibility analysis.

Finally, the Court will briefly address Plaintiff's third issue, which is whether the ALJ posed a complete hypothetical question to the vocational expert ("VE"). Clearly, because this Court is remanding Plaintiff's matter for a new hearing with regard to consideration of medical evidence as to his physical impairments, and as to his credibility regarding his subjective symptoms, this may affect the content of a hypothetical question posed at the hearing on remand.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: March 12, 2010              /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE